SIMS *vs.* MACON & WESTERN R. R. COMPANY.

1. Sayings are not admissible as a part of the *res gestæ*, if it appears that they were uttered at an indefinite time, after the happening of the thing to which they relate.
2. A rail road company is not liable for a loss occasioned by a collision of its trains, if its agents used ordinary care to prevent the collision, and if the party suffering the loss was guilty of gross negligence.

Nonsuit, in Pike superior court. Decision by Judge CABANISS, at October Term, 1858.

This was a proceeding under the statute, by Sherrod Sims against the Macon & Western Railroad Company, to recover the value of a negro man slave, killed by said road.

It appeared from the evidence of plaintiff, that the negro, about fifty years old, was sitting on the end of a cross-tie on said road, and was struck by the cow-catcher attached to the front of the locomotive, and killed—he was sitting on the outside of the road, but the cow-catcher being wider than the road, he was caught by it and terribly mangled, and killed instantly. He could have been seen by the engineer at the distance of several hundred yards—the whistle was not blown until the cars came within about twenty steps of him—he gave no heed to

the notice, (the presumption is he was asleep,) and was struck and killed as above stated. It was a timber train proceeding down grade at the rate of about twenty miles per hour, and the place was not at or near any crossing, and it was in the day and the sun shining. The negro was sober and of good character, and worth about a thousand dollars. He could have seen the train a thousand yards up the road. When killed he was sitting with his axe between his legs—his thigh and leg were torn off.

The case was submitted to a jury under the provisions of the act of ——, who found for the plaintiff one thousand dollars, from which verdict defendant appealed.

Upon the trial on appeal before Judge Cabaniss, the plaintiff offered to prove the saying and declarations of the conductor and engineer in relation to the killing. These sayings were made at Milner, a station about a mile below where the accident occurred, and after the train arrived there, and while stopping there. The train had previously stopped a short time immediately after the accident occurred. Defendant's counsel objected, and the court sustained the objection and repelled the evidence, on the ground that the sayings were not made when the killing occurred, and that they were made when not acting as agents for defendant, and that they constituted no part of the *res gestæ*. And plaintiff excepted.

Plaintiff having closed, defendant's counsel moved for a non-suit, on the ground that the proof showed that defendant was not liable. The court sustained the motion and ordered a non-suit, and plaintiff excepted.

GREEN & STUART, and FLOYD, for plaintiff in error.

MOORE, GIBSON, and PEEPLES, *contra.*

*By the Court.*—BENNING, J., delivering the opinion.

1. Was the court below right in rejecting the sayings

Sims vs. Macon & Western R. R. Company.

of the conductor and engineer? We think so. To make those sayings admissible, it ought to have appeared that they were a part of the *res gestæ*. But that did not appear. The evidence did not show what was the interval between the accident and the sayings, but it did show that it must have been a considerable interval. The train stopped immediately after the accident; it then ran to Milner, a mile off, and stopped again; after its halt there, the words were spoken, but how long after does not appear. For ought that appears, the interval between the accident and the sayings, was quite long enough to take the sayings out of the rule as to the *res gestæ*. (See Mac. & Wes. R. R. vs. Davis, decided at Macon, January, 1859.)

Was the court below right in granting the non-suit? We think so.

The case, on the part of the suffering party, Sims, was a case of the grossest negligence. There is not a single thing to serve as an excuse for his negro's being on the rail road track of the company; and that track was a place of notorious danger. To go asleep in such a place, could be nothing short of an act of the grossest negligence. And yet, that, probably, is what the negro did.

Assuming, then, that Sims, the losing party, was guilty of gross negligence, (the conduct of his negro being *pro hac vice*, his conduct,) could he be entitled to an action against the rail road company, whose train produced the loss? We are not clear that he could be. In the cases between the Macon & Western Railroad Company vs. Wynn, and between it and Davis, this court held that the company was liable, if it could have avoided the collision by the use of ordinary diligence; although it might be true, that the other party was guilty of some degree of negligence. But, in those cases, the negligence of the suffering parties did not rise to gross negligence.

Concede, however, that the rule ought to be the same in the case in which the negligence of the suffering party

does amount to gross negligence, then the question will be, whether, in the present case, the rail road company, by its agents, used ordinary care to prevent the accident?

The train was, probably, a thousand yards from the negro when he first became visible to the engineman. If the negro was awake, he, it is to be presumed, was aware of the approach of the train, even before it had come within sight of him. The noise of a running train is of itself, commonly sufficient to be heard, and to attract the notice of a person ordinarily attentive, when it is more than one thousand yards off. If a person on a rail road track, as a trespasser, is aware of the approach of a train, it is his duty to get off the track, out of the way of the train, and it is not the duty of the engine-man to stop the train, or even to blow the whistle; certainly, it cannot be his duty to blow the whistle until the train has come almost quite up to the person. Of what use could it be? This, I suppose, will not be disputed.

The whistle was blown in the present case, when the engine was twenty steps from the negro—a distance amply sufficient to admit of his escape from the track, if he was awake.

If then the negro was awake, the answer to the question will be, that the agents of the company *did* use ordinary care to prevent the accident.

Whether the negro was awake or was asleep, we cannot know. But, at first, the engine-man had the right to presume that he was awake. He was sitting up, not lying down—sitting on the end of a cross-tie. This, commonly, is the attitude of a person awake. The engine-man then, had, at first, the right to presume the negro to be awake. And whatever presumption he had the right to make, he had the right to act on.

How long did his right to make this presumption continue? It continued until the train approached so near to the negro that an ordinary person, in his place, if awake,

would have begun to move aside. How near would that be ?

The negro was sitting on the end of a cross-tie, and was beyond the reach of every part of the train, except one of the side angles of the cow-catcher. A few inches change of place would have put him quite beyond the reach of this angle of the cow-catcher. The effort that such a change of place would have cost him, would have been very slight, and the time required for the change, would have been little more than an instant. Now, an ordinary person, thus situated, if awake, would probably not begin to move aside, until the train came within some forty or fifty feet of him. It follows then, that in the present case, the engine-man would have the right to continue the presumption that the negro was awake, until the train had reached within forty or fifty feet of the negro; and consequently, that he would have the right to act on this presumption, until he came within that distance of the negro. And longer than this, he did not act on the presumption; he blew the whistle and tried to stop the train when the train was twenty steps from the negro.

At least, it would be conceded, I suppose, that he had the right to act on this presumption, until the engine had come within eighty or ninety yards of the negro. But if so, then he had the right to act on it until it would have been too late to prevent the accident, strive as he might, to prevent it. The testimony was, that it required from one hundred to one hundred and fifty yards within which to stop the train; the whistle was blown when the engine was still as much as twenty steps from the negro, and the blast had no effect on him; which shows, in all probability, if it had been blown for eighty or ninety yards, the more distant blast would have been, at least, equally ineffectual. So that, even if the engine-man, when eighty or ninety yards off, had commenced blowing the whistle, and stopping the train, it would have done no good.

7

Even, then, if the negro was asleep, the answer to the question must be the same; namely, that the agents of the company *did* use ordinary care to prevent the accident.

There is no other question, consequently, the judgments of the lower court are affirmed.

Judgment affirmed.