THE SOUTHWESTERN RAILROAD *vs.* HANKERSON.

If one voluntarily becomes drunk, and consequently falls down, or lies down, in a state of insensibility on a railroad track. so that he is injured by a passing train, he cannot recover for injuries so received, even though there may have been contributory negligence on the part of employees of the road.

Railroads. Negligence. Damages. Before Judge CRISP. Macon Superior Court. December Term, 1877.

Reported in the decision.

R. F. LYON, for plaintiff in error, cited Code, §§2972, 3033, 3034; 59 *Ga.*, 593.

W. A. HAWKINS, for defendant.

WARNER, Chief Justice.

The plaintiff brought his action against the defendant to recover damages alleged to have been done to him by the running of its train of cars upon its railroad. On the trial of

the case the jury, under the charge of the court, found a verdict for $350.00. The defendant made a motion for a new trial, on the grounds therein stated, which was over-ruled, and the defendant excepted.

The following evidence was had upon the trial of the case :

Richard Hankerson, the plaintiff, testified : Was in Marshallville the day he was hurt; had been drinking some whisky ; had taken several drinks ; does not know how many, but was not drunk ; started at two o'clock to go to Fort Valley by dirt road; when he reached Massey's crossing over the railroad track, he had something like a swimming in the head, such as he had several times previously, and he sat down—whether on the cross-ties, the rails of the railroad track, the causeway, the bridging over the railway track, or on the ground, he does not recollect, and cannot tell ; recollects nothing further until he came to himself on the train, on the way to Fort Valley, where he was carried by the train and put off, and his wounds dressed; one finger was broken, hand mashed, arm broken near the wrist, his shoulder and wrist mashed, and his head hurt ; knows his arm was broken, because the old gentleman who dressed it put splits on it, and there is the scar on his arm near the wrist to show where it was broken ; suffered a great deal of pain ; could not do any work for ninety days ; is a carpenter, and his wages worth $2.50 per day, which he received at the Dixie shops in Macon, and had just finished a job for Capt. Douglas, and was out of one, and on his way to Fort Valley to look for one; all this happened on the 16th day of February, 1875.

Wm. Gugel, the engineer on the train that ran over Hankerson, in February, 1875, testified as follows: When he got to the blow-post, 400 yards from Massey's crossing, 7 miles below Fort Valley, and when he commenced blowing the whistle, saw an object lying on the track just beyond the crossing, which he took to be a hog that had been killed by a freight train just ahead of him; when he got within 100 or 125

yards of this object he discovered that it was a man, lying between the rails with his head on a stringer close up to the rail and his body and legs doubled up towards the next stringer and between them ; as soon as he discovered this he blew on brakes, reversed the engine, blew the whistle at him in short, sharp and loud toots in order to arouse him ; the brake at the engine was put on hard, and, as far as he could tell, all the brakes of the train were put on ; he blew them on as often as three times; 'from the time he discovered that it was a man, and not a dead hog, as he first supposed, everything was done that could possibly be done by himself, and all the employees of the train, to prevent the train from running over him ; but all failed, the train running over and past him, so that the rear end of the train passed him some two car-lengths, or about 120 feet.

The road above and below this point is perfectly straight and very level, so that objects can be seen on the track several miles, and for this reason they are not in the habit of slackening as they approach the crossing, unless somebody or something is about to cross; and the reason that they did not see that this was a man earlier was that he was not on the crossing, but beyond and down between the stringers, behind the elevation caused by the crossing, which is a sort of bridge of planks raised to a level with the top of the rails, so as to enable carriages to cross with ease and safety ; and it was not until they neared the crossing so as to see over and beyond it to where Hankerson was lying, some ten or twelve feet beyond, that they could see that it was a man, and then they were too near him to take up the train, with all the means in their control, until it had passed over him. Had they commenced checking the train at the blow-post, which they did not, and trying to take her up, they could have done so before reaching him. The train consisted of an engine and five cars. As soon as he stopped the train he ran back to Hankerson. One of his fingers was broken or mashed, and otherwise he appeared to be very slightly injured ; saw a little blood on his head. They

picked him up, put him on the train, and carried him to Fort Valley, where they put him off in charge of some people there.    He was drunk—very drunk—smelt strong of whisky—and as they carried him into the car he was perfectly limber.

They do not stop or check the train for hogs or dogs, but trust to scare them off if they can, but if they cannot they do not stop ; this is their order.    If they did they could not make schedule time.

Pat Morris, for defendant: Was on the train the day Hankerson was run over ; ran back through the car, getting out at the rear end ; found him lying between the rails, his head on a stringer close up to the rail, and his body drawn up between that and the other rail.    One finger was broken, otherwise he appeared very slightly injured.    He was very drunk ; had a flask partly filled with whisky in his pocket. We picked him up, put him on the train and carried him to Fort Valley.    I was on the car with him from the time he was put on until he was put off at Fort Valley.    He did not rouse up up to the time we left him.    He stirred a little, and groaned slightly but showed no signs of consciousness. He was in a state of drunken insensibility, perfectly limber. He had no liquor—that is, he drank none, from the time he was taken up until he was put off, as before stated.

J. M. Langley : Saw Hankerson in Marshallville the day he was run over ; was in a bar-room, with a flask or bottle partly filled with white corn whisky ; wanted witness to drink with him, which he declined ; saw him take one drink, and appeared to be under its influence ; this was about 9 o'clock in the morning ; saw him again about 2 o'clock, when he was going along the road from Marshallville to Fort Valley ; passed witness at a house on the road ; saw him stagger as he walked along the road.

Dr. P. Timberlake : It is three miles from Marshallville to crossing, and the road is straight for two or three miles at the crossing.

Thos. P. Lloyd : Was at Fort Valley the day that Hankerson was brought up and put off the train ; he saw him taken

off the train immediately after; he was very drunk—stupidly so; saw a flask partly filled with whisky taken from him.

William S. Wallace: Was present when Hankerson was taken off the train at Fort Valley the day he had been run over by the train; went to him; examined him; took hold of him; with others stood him up on his feet; he was drunk —very drunk—so drunk and limber that he could not stand; when rested on his feet, they would give way and bend under him, he giving way and sinking down totally helpless and stupidly drunk; one finger was broken, a slight scratch on his head, and a bruise or two about his person, were all the signs of injury that I saw; after he got sober enough to walk about, he cursed the railroad boisterously, saying it would take more than that railroad to hurt him.

J. N. Waldin, G. W. Matthis, A. W. Mitchell, Dr. D. N. Austin, and J. J. Dasher, by interrogatories: Have seen the plaintiff; have no personal acquaintance with him; were present at Fort Valley, in 1875 or 1876, when a man calling himself Hankerson was brought from below and put off at Fort Valley; A. W. Mitchell does not remember, the balance think it was about the 20th of February, 1875; all were present when he was put off the car; he was carried to the roadmaster's office, and kept there; he was drunk and insensible; he remained in that condition for several hours; we do not remember anything he said or did after he became sober. J. J. Dasher saw him next morning get on the train, and saw nothing improper in his conduct; we do not remember his having anything in his possession except a flask containing some whisky; he was injured—one finger was broken, and some bruises on his head and on his shoulder; the wounds were slight, except the finger.

Dr. D. N. Austin: I dressed his wounds. I saw him when he was taken off the train; he was very drunk. I examined him as a physician and found one finger broken, and the slight bruises as above stated. My examination of him was thorough. I set the bone of the finger and applied some

liniment to the bruises.   He left the office and went down town after I got through dressing the wounds.   Saw some blood on his hand and cheek after examination; did not think him seriously injured about his head; his finger was broken.   I can't say the injury he received was from the cars or not.   In some cases of apoplexy bleeding might help —bleeding from the temples would not relieve in all cases. I saw Hankerson drink the liquor I gave him after he arrived at Fort Valley.   He acted like a drunken man.   I smelt whisky on him and saw whisky in his possession, and Hankerson told me had been on a drunk a day or two.   I saw him drink no liquor except what I gave him.   He could not have gotten drunk from the time of the accident to the time I saw him.

The defendant requested the court, in writing, to give to the jury the following charge : " If the plaintiff, Hankerson, in a state of intoxication, and in consequence of such intoxication, wandered off from the public road and its crossing over the railroad track, and sat down, laid down, or fell down on the railroad track, between the stringers, in consequence of such drunkenness, and lay there in a state of drunken insensibility, and the train of the railroad ran over and injured him in that condition, then the plaintiff cannot recover anything for such injuries, and your verdict in such case should be for the defendant."   The court gave the charge as requested, with the following qualification : "*Provided* the railroad company has made it appear that their agents exercised all ordinary and reasonable care and diligence to prevent such injury."   This qualification of the defendant's said request is the main ground of error complained of.   Whether the charge requested was a proper legal charge to have been given in view of the evidence in the record we express no opinion ; but, assuming that it was a proper legal charge, as the court did by giving it, as requested, it was error to qualify it in the manner as set forth in the record.   This was a suit for an alleged physical injury done to the plaintiff by the defendant.   If the plaintiff

was voluntarily drunk, and in that condition placed himself on the defendant's railroad track, he was not entitled to recover at all, under the provisions of the 2972d section of the Code, whether the defendant was negligent or not. But if he was not drunk, and could not have controlled his powers of locomotion, from a sudden attack of disease or other involuntary cause, and in consequence thereof was involuntarily upon the defendant's railroad track, then the question of negligence of the defendant might have arisen under the provisions of 3034th section of the Code.

Let the judgment of the court below be reversed.