## PARISH *v.* WESTERN & ATLANTIC RAILROAD CO.

Even if the evidence in the case was sufficient to find that the homicide of the plaintiff's daughter was caused by being stricken by some part of a locomotive or car attached to a moving train, it also shows the further facts that the person injured was on the track and in some other than an erect position, either sitting or lying thereon, and that such injury occurred at night between twelve o'clock and daylight. These facts being true, it is a conclusion of law that the injured person could (at least) have avoided the injury by the exercise of ordinary care, and there could be no recovery. The nonsuit was therefore right, and the judgment of the court below is affirmed.

LUMPKIN, P. J., and ATKINSON, J., dissenting. There was evidence from which the jury could have inferred that the person for whose homicide this action was brought was killed by the running of the train of the defendant company, and upon that evidence the presumption of negligence arose against the company. Consequently, the company might have been held liable; and there being no evidence as to the circumstances attendant upon the commission of the homicide which necessarily rebuts that presumption or shows that the person injured did not exercise ordinary care, the granting of a nonsuit was erroneous.

Argued April 20, — Decided May 21, 1897.

Action for damages. Before Judge Milner. Catoosa superior court. February term, 1896.

*B. Z. Herndon, T. R. Jones* and *W. E. Mann,* for plaintiff.
*Payne & Tye* and *R. J. & J. McCamy,* for defendant.

SIMMONS, C. J. There was no evidence tending to show that the plaintiff's daughter was killed by the railroad, except the fact that she was found lying dead near the track, her body bearing certain marks of violence described below. Her body was found at a point not near a public crossing. There was a hole in the left side of her head behind the ear, where her skull was crushed to such an extent that an egg would lie in the cavity. At about three o'clock in the morning of the 12th of December, the railroad-train passed the point where she, about daylight of the same morning, was found. Taking into consideration the time of the year, the finding of her body must, therefore, have taken place at about six o'clock of the morning. One witness said that when he first saw her, blood was running from the wound. The physician who examined her after her death testified that blood would cease running.

ten or fifteen minutes after the death of a person who died
from such a wound; that in his opinion a person who had re-
ceived such a wound might live fifteen minutes or even half
an hour.    There was no blood upon the track of the railroad,
there was no indication that the deceased had been dragged by
the engine or cars, and her clothing was not torn.    She was lying
at right angles to the track, her feet near the rail.    On the left
side of her head was the indentation referred to above, and on
the right side were a few little gashes.    Several witnesses tes-
tified as to how the accident might have happened, but it was
seen by no one.    One witness said that the deceased might
have been struck by the steps of the locomotive; another that
she might have been struck by the elliptic springs that project
from the trucks.    These, however, are mere conjectures.    To
me it seems unreasonable to suppose that if a woman had been
struck by the train at three o'clock and her head crushed as
the physician testified it was, she could have lived for nearly
three hours.    She must have lived that length of time after
the accident, if she was killed by the train; for one of the wit-
nesses testified that when he found her at daylight, blood was
running from the wound in her head, and, according to the
testimony of the doctor to the effect that in such cases blood
ceases to flow in ten or fifteen minutes, she must have been
alive less than fifteen minutes before the first witness saw her.

Whether this view of the case is correct or not the majority
of the court think immaterial, since in their opinion the plain-
tiff will in neither event be entitled to recover.    If the deceased
was killed by the train, the testimony shows that she could
not have been on the track in a standing or walking position,
for she would then have been badly mutilated.    So if she had
been directly on the track in any position.    The nature of the
wounds was such that they could have been inflicted by only
certain parts of the engine or cars, and these portions were so lo-
cated as not to strike her head had she been standing or walking
either on or near the track.    She must, therefore, have been on
the ends of the cross-ties or near the track, so near that the steps
or elliptic springs could have struck her head, and she must
have been sitting or lying down.    The watchman testifies that

at midnight he passed with a lantern the spot where she was subsequently found, and that at the time he passed she was not there.   If she was struck at all by the train, she must have sat or lain near the track after the watchman passed, and was doubtless asleep when the train passed.   Standing, she could not have received the wound in her head and no other wound on any portion of her body, if the wounds were made by a train.   If this theory be correct, she was guilty of the grossest negligence in sitting near the track of a railroad and going to sleep in the nighttime. . The evidence shows that the train which, at three o'clock, passed the place where she was found was moving at a speed of from thirty-five to forty miles an hour.   It would have been impossible for the engineer to have stopped the train in time to avoid striking her in the distance. she could be seen by the headlight.   Section 2322 of the Civil Code declares:   "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence."   Section 3830 is: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover."   For a person to sit or lie down upon or near the track of a railroad at night and to go to sleep there is gross negligence.   He knows that trains are constantly passing.   The railroad-track is itself a warning of danger to every one who goes upon it, and whoever does so, especially in the nighttime, takes his life in his own hands.   In the case of *Sims* v. *Macon & Western R. R. Co.*, 28 *Ga.* 93, the report of the case shows that Sims's slave, in the daytime, was sitting on the end of a cross-tie and was struck by the engine and killed.   He could have been seen by the engineer at a distance of several hundred yards; the whistle was not blown until the cars came within about twenty steps of him; he gave no heed to the notice (the presumption is he was asleep), and was struck and killed as above stated. He could have seen the train about a thousand yards up the road.   Sims sued the railroad company for the value of the slave, and on motion a nonsuit was granted.   Benning, J., in delivering the opinion of the court, says:   "Was the court be-

low right in granting the nonsuit? We think so. The case, on the part of the suffering party, Sims, was a case of the grossest negligence. There is not a single thing to serve as an excuse for his negro's being on the railroad-track of the company; and that track was a place of notorious danger. To go asleep in such a place, could be nothing short of an act of the grossest negligence." The case of *Raden* v. *Georgia Railroad,* 78 *Ga.* 47, was one where "Two boys, seventeen years of age, started from the house of their employer at night to go to the homes of their mothers for the night. Fifteen or twenty minutes after they left, the service-train on the railroad went by. They had had plenty of time to have crossed the railroad and reached home. They were struck by the train at a public crossing; one of them was killed and the other seriously injured. The witness by whom the plaintiffs sought to establish their right to recover, testified that the boy who died had told him that they had stopped at the crossing, and the witness was satisfied that they were asleep. . . *Held,* that a nonsuit was properly granted. To go to sleep on a railroad-crossing was such negligence and recklessness as would prevent a recovery, even though the railroad company might have been negligent." Blandford, J., in delivering the opinion of the court, says: "Even if the railroad company had been negligent, yet if the person injured could have avoided the consequences thereof to himself by ordinary care, he can not recover [citing the code section above]. So it appears to us that ordinary care would have induced any one not to go to sleep on a crossing of a railroad, and the mere going to sleep on the railroad-crossing was great negligence and recklessness on the part of these boys. The testimony submitted by the plaintiffs showed that these injuries were caused by their own negligence and the want of ordinary care to avoid the same." This was held although the boys were, when struck, on a public crossing.

In the case of *Central Railroad Co.* v. *Smith,* 78 *Ga.* 694, it appears that Smith, shortly before day, while it was yet dark, got on the railroad-track at a crossing, turned down the track, using it as a walk, and had gone only about sixty-five or seventy yards when the train, running at high speed, struck

him, threw him off the track, crushed his leg and injured him seriously. Bleckley, C. J., in discussing Smith's right to recover, said: "It would be flagrantly unreasonable and improbable to presume that he or any one else had the shadow of a right to use the track, especially at such an hour, on any other condition. The train was on its regular schedule time. He quietly walked along upon the track as if it belonged to him; the train struck him, knocked him down and broke his leg, those on the engine not seeing him or being aware of his presence. It was at least as much his business to look for the engine as it was the engineer's business to look for him. The engine was a much larger object than he was; it carried a headlight and could have been seen as far as he could. It was not possible for the engineer to have discovered him on the track sooner than he could have seen the headlight. The presence of the engine was more to be expected by him than his presence was to be expected by the engineer. He had much less reason to be surprised than the engineer had. As a matter of fact, to walk along the middle of a railroad-track between crossings when it is dark, and without knowing and remembering whether a train is due or not, and without looking out in both directions for trains that may be due, and without listening attentively and anxiously for the roar and rattle of machinery as well as for the sound of bell or whistle, is gross negligence. In the further discussion of the case (p. 700) it is said: "A person, while grossly negligent himself, has no legal right to count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard not only against negligence on their part which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late. Smith shows by his own testimony that he did not discover his danger. If he had been on the crossing, or at any place he was by right entitled to be, he would have been warranted in assuming that the whole world would be diligent in respect to him and his safety, but as he was engaged in an act of gross negligence himself, he ought to have anticipated that some-

body else might fail in diligence, and that the consequences might come down upon him before he discovered the negligence." The trial judge had refused a new trial, and this judgment was reversed although the injury had occurred in an incorporated town. Subsequently, when the case was again tried in the superior court and substantially the same evidence was introduced, the trial judge granted a nonsuit, which was affirmed by this court. *Smith* v. *Central Railroad Co.*, 82 *Ga.* 801.

In the case of *Southwestern Railroad* v. *Hankerson*, 61 *Ga.* 114, it was held that: "If one voluntarily becomes drunk, and consequently falls down, or lies down, in a state of insensibility on a railroad-track, so that he is injured by a passing train, he can not recover for injuries so received, even though there may have been contributory negligence on the part of the employees of the road."

In the case of *Wilds* v. *Brunswick & Western Railroad Co.*, 82 *Ga.* 667, it was held that: "One knowingly and needlessly walking at night upon a railroad-track can, by the use of ordinary diligence, avoid being run over by a train, unless it appears that owing to some special fact or circumstance the use of such diligence would prove ineffectual." Bleckley, C. J., in discussing the case, said: "The homicide occurred at night, several hundred yards from any public crossing; and the only reason why there was any such unfortunate calamity was, that the company and the deceased were both attempting to use the track at the same time. The company had a right to its use; the deceased had none. There is no explanation whatever as to why he did not avoid the consequences of the company's negligence. That he could have done so by exercising the care of a prudent person is manifest. . . From the facts set out in the official report, it will be seen that this killing can not be accounted for except upon the theory that the plaintiff's husband was grossly negligent. Had he been in the use of ordinary care, it seems impossible that he could have been in the way of the train at such an hour and in such a place."

We think that the principles announced in the above cited

cases by this court should control the disposition of this case. The facts here are as strong or stronger in favor of the nonsuit than the facts in the cases cited. Here was a young woman wandering about in the dead hours of the night. She seated herself on the ends of the cross-ties or near the track of the defendant's road. There was no public crossing near where she stopped. Presumably she fell asleep. The defendant's train passed along on its schedule time, and it is claimed that the deceased was killed thereby. The only theories under which the homicide can be charged to the passing train make the deceased woman's conduct necessarily such as to constitute, under the decisions cited supra, negligence so gross that her mother can not recover even if the railroad was somewhat in fault. It is argued, however, that she may have been taken suddenly ill and been compelled to stop where she did, and that therefore the railroad ought to be put upon its explanation. If such were the circumstances, how could the servants and agents of the railroad company have known anything about her sudden illness? It was in the night, and they had no reason to believe or suspect that she would be upon the track at that place. Had it been at a public crossing, then the law requires them to look specially to see if any person or thing is on the crossing. Besides, in the case of *Wilds* v. *Railroad*, supra, both in the syllabus and in the opinion, it is strongly intimated that this fact of sudden illness must be made to appear by the plaintiff and not the defendant; and in such a case we think the burden would be upon the plaintiff to show the sudden attack of illness, in order to rebut the presumption of want of ordinary care, raised by the circumstances attending the homicide.

It is also contended that the cases of *Hankerson* and *Wilds* were so decided because it appeared that they were drunk at the time they were injured. *Wilds's* case was not put upon that ground at all, nor do we see that it matters in principle whether gross negligence is committed by one who is sober or by one who is drunk. If there could be any extenuation at all, it would seem that it should be in favor of the drunken man. The sober man who is guilty of gross negligence in

walking upon the track in the nighttime, or in sitting upon the track or lying upon it asleep, does so while in possession of all his faculties. With the drunken man it is different, and his negligence arises not so much from what he does while intoxicated as from his act in placing himself in that condition.

It is also contended that, under our code, when it is shown that a person is killed or injured by a railroad-train, the law presumes that the company was negligent. This is true, and ordinarily it is incumbent upon the railroad company to show that it exercised all reasonable care at the time of the accident; but where the plaintiff's own evidence shows that he was guilty of gross negligence, the presumption against the company is rebutted or overcome and the plaintiff can not recover, even though the company may have been in fault. We think, for these reasons and under the principles of the cases above cited, that the court did not err in granting a nonsuit in this case.

*Judgment affirmed. All the Justices concurring, except*

LUMPKIN, P. J., and ATKINSON, J., dissenting. Our objection to the disposition which the trial judge, with the approval of a majority of this court, has made of this case is, that we believe it amounts to usurping of a function which properly belongs to a jury. The evidence does not affirmatively show in what manner the death of the plaintiff's daughter was occasioned. It is a thing which has to be reasoned out from the established facts; and this, under our system, is peculiarly an appropriate task for a jury. The testimony would support a number of different theories. That adopted by the court and discussed in the foregoing opinion is certainly a plausible one, but we can not undertake to say that, as matter of law, it is correct. The argument in support of it is strongly put by the Chief Justice. Such an argument, if addressed to a jury, ought to have great, if not convincing, weight. At the same time, they would not be obliged to accept and follow it. A very strong argument could be made, upon the evidence in this record, in support of a contention that the deceased was not killed by a train of the defendant. It is not, however, insisted that a finding that she was so killed would have been

unwarranted. The truth is, none. of us know, or ever can know, exactly how she came to her death.

We do not wish to be understood as entertaining the view that the plaintiff ought necessarily to have had a verdict. Our position simply is, that whether or not he was entitled to recover was a question for a jury. Upon the assumption that the deceased was killed by a passing train of the defendant, the plaintiff had in his favor a legal presumption that the company was negligent, and therefore liable. We are not. prepared to say that this presumption was certainly rebutted; nor are we able to agree with our brethren in saying that the evidence conclusively shows the deceased to have been wanting in ordinary care. None of the cases cited are authoritative or controlling in the case at bar. Each depends upon its own peculiar facts, and no one of them is precisely like the case in hand.

It is not our purpose to discuss the evidence. We simply desire to present in this brief form our reasons for being unable to concur in the judgment of this court affirming that of the trial court in granting a nonsuit.