## WEINKLE & SONS *v.* BRUNSWICK AND WESTERN RAILROAD COMPANY, and *vice versa.*

1. Although a trial court may have granted a new trial upon a single ground embraced in the motion therefor, an examination of which here shows that the ruling therein complained of was not erroneous, still if it be the first grant of a new trial in the case, and the law and facts did not require the verdict, the judgment will not be reversed.

2. Even if it be competent and lawful for a railroad company to stipulate, in a contract between itself and another person for the construction of a side-track for their mutual benefit, against liability for negligently killing or injuring live stock thereon, such a stipulation has no bearing upon a controversy arising from the killing by the company of stock elsewhere upon its line of road. The stipulation of this character embraced in the contract now under review related exclusively to damaging stock on the side-track ; and the court erred in holding otherwise.

3. It was, on the trial of an action against a railroad company for the killing of live stock, erroneous to admit in evidence against the company sayings of the engineer not constituting a part of the res gestæ of the occurrence.

4. It was also on such a trial erroneous to charge the jury as follows : "When an accident of this kind happens, the law makes it the duty of the railroad company to produce all of its employees who were engaged in running the train, because they are the people who were there and ought to know how the accident happened, and it is incumbent upon them to produce before you all of the employees engaged in operating the train ; and if they have employees who were engaged in the operation of the train causing and producing such an injury, and who they do not produce upon the trial of the case, and which they could produce and introduce before the jury, or for whose absence they do not account, do not explain why they have not such witnesses before the court, the jury can take that as an inference that such absent witnesses, if they were present testifying before the court and jury, would give testimony prejudicial to the defendant's defense ; that is, you could take the absence of such witnesses, if there be such, as a circumstance that such witnesses, if they were here, would testify to something prejudicial to the defense of the defendant company."

Submitted March 27,—Decided April 24, 1899.

Action for damages. Before Judge Atkinson. City court of Brunswick. July 28, 1898.

*W. G. Brantley, Owens Johnson* and *A. D. Gale*, for plaintiffs. *Goodyear & Kay*, for defendant.

COBB, J.    Weinkle & Sons brought suit against the Brunswick and Western Railroad Company, alleging that the defendant had run and operated one of its trains in such a careless, negligent and improper manner that four mules, the property of petitioners, had been killed and two others had been wounded and bruised, and that petitioners had sustained damage therefrom in the sum of $845.    The defendant answered the petition, denying all of the allegations of negligence therein contained, and pleaded in bar of the action that plaintiffs and defendant had entered into a contract for the construction of a side-track for the mutual benefit of defendant and plaintiffs, and one of the stipulations in the contract was that in no event was the defendant to be held liable for damages of the character sued for.    Upon the trial the jury returned a verdict in favor of the plaintiffs for $500.    The defendant filed a motion for a new trial, which the court granted upon one ground, in effect overruling the motion on all of the other grounds.    The case is here upon a bill of exceptions of the plaintiffs, assigning error upon the judgment of the court granting a new trial; and upon a cross-bill of exceptions of the defendant, assigning error upon the court's refusal to grant a new trial on all of the grounds stated in the motion.

1, 2.    As this is the first grant of a new trial, the main bill of exceptions must be affirmed unless it appears that the law and facts required the verdict which has been rendered in the case. Civil Code, § 5585.    This is true notwithstanding the new trial was granted upon a single ground and that involved a question of law only.    *Johnson* v. *Railroad Co.*, 102 *Ga.* 577 ; *Railway Company* v. *Higgins*, Ibid. 586. .    It may be now considered as settled that this court will not, under any circumstances, reverse a judgment granting a first new trial, whether the grant be general upon all the grounds of the motion or special upon one or more grounds only, or whether it be upon a ground which involves questions of evidence or upon a ground which involves purely questions of law; unless it is made to appear that no other verdict than the one rendered could possibly have

been returned under the law and facts of the case. Unless the case can be brought within the exception just stated, it is useless for parties to bring before this court the judgment of a trial judge granting a first new trial.

If, however, this had not been the first grant of a new trial and we had been constrained to pass upon the question made by the judgment granting the new trial upon the ground upon which the judge below based his decision, we would be compelled to hold that the granting of a new trial upon this ground was erroneous. The defendant, to support its special plea above referred to, offered in evidence a contract between the plaintiffs and itself, which provided for the construction of a side-track for the mutual benefit of the contracting parties, and in which it was stipulated "that as, by reason of this contract, the stock and other property of [the plaintiffs] (both as a firm and as individuals) may be exposed to greater liability to injury, and as a part of the consideration for the use of said side-track, [the plaintiffs] will, and hereby [do], release and discharge said railway company from any and all liability for any damage done to any of the stock or other property of the [plaintiffs], or done to the stock or property of any member of the said firm, . . by the running of the locomotives or cars or other machinery of said railway company during the existence of this contract, and also to hold said railway company harmless for any and all damage that may result to stock or other property of third persons that may be in the employ, use, control or custody of [the plaintiffs], or to any stock that may be attracted to said side-track by reason of the use of the same by [the plaintiffs]." This contract was rejected, and a new trial was granted solely upon the ground that the judge was of opinion that he had committed error in this ruling. We do not think the court erred in refusing to admit this contract in evidence. The foregoing extract contains all of the contract which relates in any way to the liability of the railroad company for damages on account of killing or injuring the live stock of the plaintiffs; and, construing this extract as a whole, it seems clear that the contract was not intended to release the railroad company from liability for the killing or injuring of the live stock

of the plaintiffs at places other than the side-track which was constructed under the terms of the contract. As the evidence was that the train which killed the plaintiffs' stock was not upon the side-track which was constructed under this contract, but was upon another part of the defendant's line of road, the contract was irrelevant to the issue on trial, and was properly rejected. The contract being irrelevant for the reasons stated, there is no occasion to determine whether or not such a contract is invalid as opposed to public policy, because intended to have the effect of releasing the defendant from the consequences of its own negligence.

3. One ground of the motion for a new trial was, that the court erred in permitting a witness, when asked the question : " What, if anything, did the engineer say to you when you went out there?" to answer: "As I came up, the engineer sang out to me, 'Hello, Cap, it looks like we have killed some of your mules,' and I said, 'They are not my mules,' and he then turned to the fireman and said, 'We have sure played hell to-night';" the objection to this testimony being that the engineer was not clothed with authority to bind the company; and that the evidence was illegal and inadmissible, being no part of the res gestæ, as it appeared that the witness was at his house some distance away when the mules were killed, and that he walked from his house to the train before having the conversation above quoted. Unless the declarations of the engineer were made while he was engaged in the transaction of some business of the company with the person with whom he was talking within the scope of his authority, or were declarations accompanying an act done by him in discharge of some duty imposed upon him in his relation as a servant of the company, the evidence was inadmissible and should have been rejected. It is not pretended that the statements made by the engineer were made in the course of any transaction with the witness in relation to the company's business, and therefore such statements do not come within the reason of that rule which permits the declarations of an agent to be introduced against his principal when they are made dum fervet opus. Were the statements of the engineer a part of the res gestæ of

the occurrence so as to make them admissible for that reason? It does not distinctly appear in the record what was the lapse of time between the killing of the mules and the conversation between the engineer and the witness; but from what does appear it must have been such a lapse of time as that the declarations were not, in any sense, contemporaneous with the act of killing the mules. The witness was not present at the time that the collision occurred, and it is to be inferred from what is stated in the motion for a new trial that when the witness arrived upon the scene such time had elapsed that the engineer was in a position to fully realize the consequences resulting to the company from the killing of the mules, and that therefore the occurrence which was the subject of the conversation was in the past. This view is strengthened by the very language used by the engineer. It is the language not of exclamation or surprise, but the language of narrative with a full appreciation of the consequences growing out of a transaction which is passed and complete. The statements made by the engineer were not such declarations accompanying the act of injuring the plaintiffs' property as to render them admissible as a part of the res gestæ. See in this connection *Sims* v. *Railroad Co.*, 28 *Ga.* 93; *Newsom* v. *Georgia Railroad*, 66 *Ga.* 57; *Railroad Company* v. *Varnedoe*, 81 *Ga.* 175; *Railroad Company* v. *Liddell*, 85 *Ga.* 483; *Railroad Company* v. *Skellie*, 86 *Ga.* 686. In *Railroad Company* v. *Smith*, 76 *Ga.* 634, the declarations of an agent were admitted on the ground that the agent in question was the "*alter ego* or mouthpiece of the corporation he represented, and acting within the scope of his authority," and that for that reason his principal was bound by his declarations. In *Krogg* v. *Railroad Co.*, 77 *Ga.* 202, the statements of the general manager, made at the scene of a wreck, that the wreck was caused by too much elevation on the curve of the track, and that he would remedy it and have no more such accidents in the future, were admitted to show knowledge of the corporation of the improper construction and condition of the road before the accident, the general manager being the alter ego of the corporation; and upon the further ground that it was the duty of the general manager to investigate the cause of the

disaster, and that anything said while in the discharge of this duty was a declaration dum fervet opus and a part of the res gestæ of that transaction, that is, the investigation into the disaster.    Justice Blandford in the opinion says: "We do not mean to say that the general rule is not as that contended for by the able counsel for plaintiff in error, to wit, that a railroad company is not bound by the admissions of an agent as to an occurrence after the same has taken place; but we think that that rule is subject to the qualifications already stated.    If the agent be in the performance of a duty of the corporation, while thus performing that duty, what he says as to any defect in the structure of the road is *res gestæ* as to such defect, and his admissions are the admissions of the corporation."

4. The charge set forth in the fourth headnote was erroneous.    The law does not make it the duty of a litigant to produce witnesses; and this applies to railroads as well as to natural persons.    The law will sometimes allow inferences unfavorable to a litigant to be drawn by the jury from the fact that witnesses who are accessible are not called and sworn.    It is, however, no breach of duty on the part of a litigant to fail or refuse to produce witnesses to sustain a complaint or to prove a defense.    If he fails or refuses to produce witnesses that are accessible, he must take the consequences resulting from the jury drawing an inference that such failure or refusal was caused by the fact that such witnesses would, if produced, have testified to facts prejudicial to him.    The code declares that, "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted."    Civil Code, § 5163.    But no presumption will ever arise prejudicial to the party failing to produce the witness, provided the jury are satisfied from the evidence before them that the party who had such witness accessible has nevertheless proved his claim or established his defense.    The failure to call and have sworn witnesses who are accessible and

peculiarly within the power of a party will authorize argument by counsel before a jury, that in case the jury be in doubt as to the truth of the transaction they might infer that the absent witnesses, if in court, would have furnished evidence prejudicial to the party who has failed to produce them. If a litigant sees proper to rest his case upon one witness, although many others may be accessible, he has a right to do so, and the law imposes upon him no duty to do otherwise. Therefore the law does not require a railroad company to produce all of its employees who were engaged in the running of a train the operation of which caused damage to any one, when a suit growing out of such alleged damage is on trial. If the jury believe that the defense is established out of the mouths of the witnesses called, they should not find against the company solely on the ground that there were other witnesses to the transaction who were not produced. *Railroad Company* v. *Gray*, 77 *Ga.* 440; *Anderson* v. *Publishing Co.*, 100 *Ga.* 454; *Railroad Company* v. *Morrison*, 102 *Ga.* 319.

Judgment on main bill of exceptions affirmed; on cross-bill reversed. *All the Justices concurring.*