26039.   INTERNATIONAL HARVESTER CO. *v.* FELTON.

Decided July 13, 1937.   Rehearing denied July 28, 1937.

*Paul F. Akin,* for plaintiff.   *Herschel Parham,* for defendant.

MacIntyre, J.   The plaintiff brought suit against the defendant on a renewal note for $532.03, payable to the plaintiff, dated January 1, 1933, due April 10, 1933.   The judge directed a verdict, and later granted a first new trial.   The note sued on was in renewal of a note dated September 1, 1931, given for the purchase-price of a tractor.   It contained the following language: "This is a renewal and extension of time of payment of my note No. 424-31, year 191—— (with——————other notes), in full payment of the purchase-price of 1 Farmall Tractor QC60835 machine; and in consideration of such renewal and extension of time of payment, I hereby expressly waive all claims arising out

of the purchase of said property, and all defenses, statutory or otherwise, to the payment hereof. The title of said machine is and shall remain in said payee until paid for in full. Should said property for which this note is given be lost, burned, or otherwise destroyed before payment of this note, I nevertheless promise to pay same." The defense was not based on a rescission of the contract on the ground of actual fraud, but proceeded on the basis of the affirmance of the contract, and set up damages by way of failure of consideration. *Barfield* v. *Farkas,* 40 *Ga. App.* 559 (6) (150 S. E. 600).

The first question presented is, was the note delivered? The testimony of the defendant was, in part: "When Mr. Lewis [agent of the plaintiff] took this renewal note, he came out there about, I would say, oh, I guess 10 or 11 o'clock. He says 'We have got to do something about this tractor.' I says, 'Yes, we have got to do something about the tractor.' I says, 'We have got to get it in a different form.' He says, 'Yes, we have got to get an adjustment on the note.' And he says, 'I can't give you an adjustment on it until I get back to Atlanta; but if you will sign this renewal note, I will go back to Atlanta, and we will get a satisfactory adjustment, put it back on the note and mail you a receipt for it.' Mr. Lewis said that, in his little red touring car, before I signed the note. That's the time I signed that note. The words Mr. Lewis said, 'The International Harvester Company is too big a concern not to do the right thing about it.' I mean by adjustment, that Mr. Lewis agreed that he would go to Atlanta and see the office about it, and put a satisfactory credit on this note; we talked about an amount, but it never was anything definite. As well as I can remember, the amount was something around $260 or $270. I think Mr. Lewis mentioned the amount. We didn't agree on that amount, not altogether finally; but it was going to be satisfactory, and he was going to mail a receipt back, and if it hadn't been satisfactory I would have taken it up with him." This testimony, we think, was to the effect that the note was delivered, that the contract was closed by the note sued on, and that there was a promise by the agent to secure a credit on this note, which was merely a promise inconsistent with the written contract. We do not think that it can be said that the note had been delivered to the plaintiff's agent in escrow and its final

delivery was to be completed only when the credit was made on the note. *Pidcock* v. *Crouch,* 7 *Ga. App.* 299, 301 (66 S. E. 971).

The provisions of the renewal note sued on, pertinent to this decision, are the same as the provisions of the renewal note sued on in *Anderson* v. *International Harvester Co.,* 27 *Ga. App.* 533 (109 S. E. 417). In this case, under the rule stated in that case, all previous and contemporaneous warranties and promises to repair and adjust were merged in the renewal note. The provisions of the renewal note sued on in the case sub judice must be taken as a waiver of the alleged warranties and promises, relative to the tractor, which were made before or at the time of the execution of this note. And these promises and warranties can not be enforced in this case, because, in order to do so, it is thereby necessary to add to or vary the terms of the agreement covered by and embodied in the written instrument. This disposes of all questions of promises made contemporaneously with or before the execution and delivery of the renewal note. The defendant, however, makes the further contention that after the signing and delivery (if it was delivered) of the renewal note, he made certain payments thereon, and the plaintiff made certain promises at the time of these payments. To put it in his own language: "I never paid five cents on that tractor that I didn't say something about an adjustment, and every one of you promised to do something about it. You [the attorney] promised to do something about an adjustment, if you remember; you can remember it. You said you would take it up with the plaintiffs. . . I mean by adjusting, give me a reduction or give me a receipt for what I was damaged on the tractor. I mean credit the note with that." However, when the plaintiff testified as to what happened and what was said on each of the occasions at the time of the respective payments on the renewal note, he said, with reference to the first payment: "When I made the $20 payment on the note, . . I said, 'Mr. Rhodes, I am not going to pay but very little more on this tractor; there had to be something done.' . . He says, 'I am just working for Mr. Lewis, who is on his vacation.' . . He further said, . . 'I will take it up with Mr. Lewis, and see what can be done about it, but something will have to be done about it.'" With reference to the second payment on the renewal note, the

defendant testified: "On February 26, [1934], when I made the $100 payment to Mr. Lombert of Atlanta, the first $100 payment, he was going to see Mr. Lewis and some other gentleman and Mr. Akin" (their attorney at law). With reference to the third payment on the renewal note, the defendant testified: "Mr. Pittard told me that night up at Cassville, when I paid him the $50, he was going to take the adjustment up with Mr. Lewis." With reference to the fourth payment on the renewal note, the defendant testified, "You [Mr. Akin, the attorney for the plaintiff] remember you told me to go to Atlanta, that you couldn't give any adjustment; you told me to go there and see Mr. Lombert. I stated that when I paid you $100. I went the day that you were going to file suit at twelve o'clock. And at the time when I made the payment to Mr. Akin, I went to Atlanta that same day and talked with Mr. Lombert. Mr. Lewis was out of the city. . . In other words, every time you went to one of them, they pass the buck on; Mr. Lewis wasn't there. And Mr. Lombert said, 'Felton, I will have to get this adjusted, and we will help you. We will do something about it.' I says, 'Mr. Lombert, you keep on promising; it's time I was getting something back.' And he says, 'I will talk to Mr. Akin.' And he said he was going to call Akin up, and he was going to talk it over with Mr. Lewis and some other gentleman. He called another man's name."

The ruling in *Atlanta City Street Railway Co.* v. *American Car Co.,* 103 *Ga.* 254 (29 S. E. 925), that a promise to repair as a consideration for a renewal and a failure to keep such a promise, resulting in injury to the maker, is a good defense between the original parties, where the written instrument did not expressly or by implication provide otherwise, is not applicable in the instant case, because the undisputed evidence with reference to the payments on the renewal note shows that when these indefinite proposals of adjustment were made by the defendant to some agent of the company the agents would always respond by saying that they would take it up with some other agent of the company or the company's attorney; and that there was no definite agreement, or no agreement of sufficient definiteness, as to what the plaintiff was willing to do with reference to the proposed adjustment, as to be capable of enforcement. The rule that where a contract, agreement, or undertaking has been reduced

to writing, and is evidenced by a document, or series of documents, the contents of such documents can not be contradicted or varied by parol, seems to be a necessary one, because of the obvious fact that written instruments would soon come to be of little value if their explicit provisions could be varied, controlled, or superseded by parol evidence; especially where, as in this case, the evidence discloses so vague and different a proposal to change the note, and the reply to this proposal was so noncommittal and uncertain, that there was under no view of the evidence a binding promise or assent to any of the proposals to vary the renewal note by the plaintiff corporation, through its authorized agent, which were sufficiently certain and mutual to be enforceable.

"As this is the first grant of a new trial, the main bill of exceptions must be affirmed, unless it appears that the law and the facts require the verdict which has been rendered in the case." *Weinkle* v. *Brunswick & Western R. Co.*, 107 *Ga.* 367 (33 S. E. 471); Code, § 6-1608. Viewing the record in the instant case as a whole, the verdict as to *each material issue involved in the case was demanded* by the law and the evidence, and it appears that no verdict other than the one rendered could possibly have been returned under the law and facts of the case. *Cox* v. *Grady,* supra; *Rowe Motor Express Co.* v. *Twiggs County,* 152 *Ga.* 548 (110 S. E. 303); *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 722 (145 S. E. 486). Therefore we are of the opinion that the judgment granting a new trial should be

*Reversed. Broyles, C. J., and Guerry, J., concur.*