42087. AUGUSTA COACH COMPANY et al. v. LEE.

512

DECIDED MARCH 16, 1967—REHEARING DENIED MARCH 30, 1967—

*Fulcher, Fulcher, Hagler, Harper & Reed, Gould B. Hagler,* for appellant.

*Thurmond, Hester, Jolles & McElmurray, Thomas R. Burnside, Jr.,* for appellee.

FRANKUM, Judge. On September 15, 1966, this court reversed the judgment of the trial court in favor of the plaintiff. 114 Ga. App. 452 (151 SE2d 803). A rehearing was denied on October 11, 1966, and the Supreme Court granted certiorari. The Supreme Court reversed this court. See *Lee v. Augusta Coach Co.,* 223 Ga. 72 (153 SE2d 429).

The basis for the opinion of this court originally was that the evidence as to a causal connection between the accident in question and the death of the plaintiff's husband was too vague, uncertain and speculative to authorize any finding that there was any such causal connection. Upon this issue alone the Supreme Court granted certiorari and reversed this court.

The case having been remanded to this court, it now becomes necessary and appropriate for us to consider the other issue raised by the enumerations of error. That issue relates to whether or not there was any evidence adduced on the trial of the case which would have authorized the jury to find that the driver of the defendant's bus was negligent in operating the bus. While, in rendering the former decision, we stated that the dece-

dent's automobile "was involved in a collision with a bus of the defendant, Augusta Coach Company, resulting in minor damage to his automobile *when it was struck from behind by such bus while his automobile was standing at an intersection waiting for a traffic light*" (emphasis supplied), at the time the former opinion containing this statement was prepared, this court, being, as it was, of the opinion that there was no causal connection between any collision and the death of the plaintiff's husband, made this statement solely by way of narrative and in explanation of the nature of the case. Having reached the conclusion which we did as to the proper disposition of the case, and since that conclusion would have finally disposed of the issues in the case, we did not go into the issue of liability or make a determination as to whether the defendant had been guilty of negligence. However, upon remand of the case to this court, and having that issue presented to us, we have concluded that not only was this statement not authorized by the evidence, but that there was no evidence which would have authorized the jury to find that the driver of the bus was guilty of any negligence in the operation of the bus. The only evidence that in any way threw any light on what occurred was the testimony of J. W. Ford, a police officer of the City of Augusta, who was called upon to investigate the occurrence. Clearly, from the evidence, Mr. Ford was not an eyewitness to the occurrence, for he stated that all he knew about the occurrence was what the parties had told him. He testified that when he arrived at the scene both the Pontiac automobile and the bus were still behind the white line on the west side of the intersection of Walton Way and Heard Avenue; that the contour of the streets at that point is real steep, "it's about 30 degree incline"; that when he arrived both Mr. Lee and Mr. Angels, the bus driver, were standing on the edge of the street talking to one another; that the bus was damaged in the front and the Pontiac was damaged in the rear; that he had occasion to talk to the bus driver at the scene of the collision; and that he stated to the witness that Mr. Lee had stopped for the red light and he could not stop and ran into the rear of his car; and that it was the witness' opinion that the bus was following too closely.

The foregoing constituted all of the evidence about which there is any question as to admissibility or probative value. There was other testimony by this witness, which was admitted over objection, to the effect that he saw the bus driver two weeks after the date of the collision, and that the bus driver informed him that the bus did not have good brakes, but this was clearly hearsay testimony and had no probative value, and therefore was insufficient to authorize a verdict for the plaintiff. However, there is no enumeration of error before this court on the admission of this evidence, and it cannot, therefore, be made the basis of any ruling by this court as to its admissibility.

The question thus presented is: Were the statements made by the bus driver to the police officer who investigated the accident a part of the res gestae and thus an exception to the hearsay rule so that the testimony of the police officer as to those statements was admissible and of such probative value as to constitute sufficient evidence of negligence on the part of the bus driver to authorize the jury to find for the plaintiff on this issue? We are convinced that the testimony of the police officer as to these statements was not within the res gestae exception to the hearsay rule, and that this evidence was not sufficient to support a verdict for the plaintiff.

In *Weinkle v. Brunswick & W. R. Co.*, 107 Ga. 367, 370 (3) (33 SE 471), it appeared that suit was brought against the railroad company for the killing of 4 mules, the property of the petitioners. When the killing occurred the train was brought to a stop, and a witness for the plaintiff approached from his house, which was located some distance away, and engaged the engineer and the fireman in a conversation. The court permitted the following question and the answer thereto: "What, if anything, did the engineer say to you when you went out there?" Answer: "As I came up, the engineer sang out to me, 'Hello, Cap, it looks like we have killed some of your mules,' and I said, 'They are not my mules,' and he then turned to the fireman and said, 'We have sure played hell tonight.'" This testimony was objected to on the ground that the engineer was not clothed with authority to bind the company, and that the evidence being no part of the res gestae was inadmissible. In

passing upon this exception the Supreme Court, in an opinion by Justice Cobb, said: "Unless the declarations of the engineer were made while he was engaged in the transaction of some business of the company with the person with whom he was talking within the scope of his authority, or were declarations accompanying an act done by him in discharge of some duty imposed upon him in his relation as a servant of the company, the evidence was inadmissible and should have been rejected. It is not pretended that the statements made by the engineer were made in the course of any transaction with the witness in relation to the company's business, and therefore such statements do not come within the reason of that rule which permits the declarations of an agent to be introduced against his principal when they are made dum fervet opus. Were the statements of the engineer a part of the res gestae of the occurrence so as to make them admissible for that reason? It does not distinctly appear in the record what was the lapse of time between the killing of the mules and the conversation between the engineer and the witness; but from what does appear it must have been such a lapse of time as that the declarations were not, in any sense, contemporaneous with the act of killing the mules. The witness was not present at the time that the collision occurred, and it is to be inferred from what is stated in the motion for a new trial that when the witness arrived upon the scene such time had elapsed that the engineer was in a position to fully realize the consequences resulting to the company from the killing of the mules, and that therefore the occurrence which was the subject of the conversation was in the past. This view is strengthened by the very language used by the engineer. It is the language not of exclamation or surprise, but the language of narrative with a full appreciation of the consequences growing out of a transaction which is passed and complete. The statements made by the engineer were not such declarations accompanying the act of injuring the plaintiffs' property as to render them admissible as a part of the res gestae. See in this connection *Sims v. Railroad Co.*, 28 Ga. 93; *Newsom v. Georgia Railroad*, 66 Ga. 57; *Railroad Company v. Varnedoe*, 81 Ga. 175; *Railroad Company v. Liddell*, 85 Ga. 483; *Railroad Com-*

*pany v. Skellie,* 86 Ga. 686." In *Sims v. Macon & W. R. Co.,* 28 Ga. 93, supra, a case involving the killing of a Negro slave, testimony as to similar statements of the conductor and engineer made after the train had been stopped and then run on to Milner, a distance of approximately a mile, were held to have been properly rejected as being no part of the res gestae. In *Western & A. R. Co. v. Beason,* 112 Ga. 553, 557 (37 SE 863), the Supreme Court held that the trial court erred in admitting as a part of the res gestae testimony as to statements made to the witness by the injured person, the plaintiff's husband, after he had fallen from the defendant's train, which statements undertook to relate to the witness the place upon the train which he had been riding and to explain the manner in which he was thrown to the ground and injured. There the Supreme Court said: "We think [this evidence] should have been excluded. What the injured man said to the witnesses was manifestly a mere narrative of a past occurrence. His statements, notwithstanding the fact that he was suffering great pain, were made deliberately and connectedly. They were in no sense exclamatory, and manifestly did not proceed from him as part and parcel of the catastrophe. It is true these statements were made within a few minutes [after the occurrence]; but, in determining whether declarations should be received as a part of the res gestae of an occurrence, the mere question of the lapse of time is not controlling. The real test is: were the declarations a part of the occurrence to which they relate, or were they a mere narrative concerning something which had fully taken place and had therefore become a thing of the past? See *Augusta R. Co. v. Randall,* 79 Ga. 304; *Savannah R. Co. v. Holland,* 82 Ga. 257; *Poole v. Railway Co.,* 92 Ga. 337; *Roach v. Railroad Co.,* 93 Ga. 785; *Electric R. Co. v. Carson,* 98 Ga. 652; *Weinkle v. Railroad Co.,* 107 Ga. 367; *Howard v. State,* 109 Ga. 137, 141." Recent cases applying the rule that a mere narrative of past events given to the witness testifying by some person not a party to the lawsuit is mere hearsay evidence and of no probative value are *Liberty Mut. Ins. Co. v. Meeks,* 81 Ga. App. 800, 803 (60 SE2d 258), and *Flanigan v. Reville,* 107 Ga. App. 382 (4) (130 SE2d 258). And see also Green, Georgia Law of Evidence, 590, § 292.

Hearsay evidence, even when admitted without objection, is wholly without probative value and carries no weight or force whatever in establishing a fact. *Miller & Co. v. McKenzie,* 126 Ga. 746 (1) (55 SE 952); *Higgins v. Trentham,* 186 Ga. 264 (1) (197 SE 862); *Rimes v. Martin,* 197 Ga. 273, 280 (2) (29 SE2d 49). The consequence of the admission of hearsay testimony without objection is not the same as the admission of the conclusion of a witness without a showing of the factual basis therefor. In the latter case the testimony has probative value because the witness could have had knowledge or foundation for his conclusion. This is not true of hearsay.

The testimony of the police officer in this case as to what he knew about how the accident occurred clearly came from the lips of the bus driver at some indefinite time after the occurrence. It was not testimony of an exclamation or surprise uttered at the time of, or so nearly in connection with, the occurrence as to reasonably be said to constitute a part of the res gestae. While we recognize the general rule that "the question of whether a given declaration is a part of the res gestae is for the determination of the [trial] court and within its sound discretion" (*A. K. Adams & Co. v. Homeyer,* 87 Ga. App. 301, 303 (1) (73 SE2d 581)), we do not think that under any reasonable view it can be said that this testimony was a part of the res gestae. Even though counsel for the defendant stated in the course of colloquy between the court and counsel that such evidence was admissible, that statement could have no effect in raising the character of the evidence above its status as hearsay evidence, nor could it have the effect of giving it any probative value, any more than had counsel merely failed to object to its admission. There was no other evidence adduced on the trial of the case, save a mere scintilla of circumstances, to authorize a finding that the defendant's driver was negligent in the operation of the bus. These circumstances were as consistent with the theory that the collision, if there was one, resulted from the negligence of Mr. Lee as that it resulted from the negligence of the bus driver, and they were, therefore, insufficient to authorize a verdict for the plaintiff. In fact, without this hearsay evidence, there was no evidence at all that there

was even a collision, and certainly none pointing to the cause of any such collision. The plaintiff thus failed to carry the burden of proving an essential element of this case, to wit: negligence of the defendant's driver. Furthermore, there was no competent evidence showing that the deceased stopped for a red traffic light at the intersection. There is no presumption that one does not stop when a light is green. If the evidence had authorized a finding that the deceased had stopped for a red light or that his vehicle was hit in the rear by the bus, a finding would have been authorized that the bus driver was negligent for the reason that he must exercise ordinary care to avoid striking a vehicle in the process of stopping for a red traffic light or after it has stopped. Since there was no evidence of probative value that the deceased was in the process of stopping for a red light or had done so, there is no evidence that the bus driver was negligent merely because he struck deceased's vehicle from behind. The trial court, for these reasons, erred in overruling the appellants' motion for a judgment notwithstanding the verdict.

*Judgment reversed. Felton, C. J., and Pannell, J., concur.*