32822. ALLGOOD *v.* DALTON BRICK & TILE CORP. *et al.*

190

Decided March 17, 1950.

*Gleason & Painter,* for plaintiff.

*Pittman, Hodge & Kinney, Mitchell & Mitchell,* for defendants.

Sutton, C. J.   John Thomas Allgood sustained severe personal injuries and the motorcycle which he was riding was damaged when he crashed into a Studebaker tractor or truck driven by Barney Earl Thomas on Sunday, June 6, 1948.   The collision occurred on U. S. Highway No. 41 approximately 1½ miles south of Tunnel Hill, Georgia.   Thomas was proceeding north on the highway in the truck, and Allgood was proceeding south on the motorcycle, and Thomas suddenly turned the truck into the lane on his left directly in the path of the oncoming motorcycle. Allgood brought suit in Whitfield Superior Court against Thomas and the Dalton Brick and Tile Corporation for damages, alleging, among other things, that at the time of the collision Thomas was an employee of the defendant corporation acting within the scope of his employment.   The defense of the corporation was that Thomas was not an employee of the corporation acting within the scope of his employment at the time and place in question. On the first trial of the case a verdict was returned for the plaintiff, but the trial judge granted a new trial, and on the second trial the judge directed a verdict for the defendant corporation and declared a mistrial as to the defendant Thomas on

the refusal of the plaintiff to proceed against Thomas alone. The plaintiff excepted to the direction of the verdict and the judgment thereon, and to certain antecedent rulings, and brought the case to this court by a direct bill of exceptions. So much of the record and the evidence as is necessary for an understanding of the various assignments of error and the rulings thereon is stated wherever applicable throughout the opinion.

■ The first assignment of error is on the refusal of the trial judge to qualify the jurors with respect to being a stockholder in, related to a stockholder in, or employed by the Fidelity and Casualty Company of New York. It was shown that counsel had been employed by the insurance company and were present in court for the purpose of defending the action for the Dalton Brick and Tile Corporation. As subsequent rulings herein are controlling, it is unnecessary to determine the correctness of the ruling of the trial judge in his refusal to qualify the jurors as requested by the plaintiff.

■ The defendant corporation objected to the testimony of Roy Bennett Jr., a State Highway Patrolman, that Thomas, the driver of the truck, told him in the course of an investigation which took place 15 or 20 minutes after the collision that the Dalton Brick and Tile Corporation was the owner of the truck involved; and objected to the testimony of Mrs. Allgood, the wife of the plaintiff, that Thomas told her when he came to visit the plaintiff at the hospital after the collision that the Dalton Brick and Tile Corporation owned the truck; and to the testimony of Mrs. Sarah Blair, the mother-in-law of the plaintiff, that Thomas told her he drove a truck for the Dalton Brick and Tile Corporation and had been to get gasoline and oil for the truck at the time of the collision, the statement having been made when Thomas and Mrs. Blair were riding home in a taxicab after having been to the hospital to see the plaintiff after the collision. All of this testimony was excluded by the trial judge, and his rulings in this respect are the basis of the second, third, and fourth assignments of error. None of the statements of the defendant Thomas as shown above could be properly included in the res gestae on account of the time element involved, and the authority of Thomas to make such admissions as against the corporation was not established. The

192

statements were inadmissible hearsay as to the corporation, and were properly excluded by the trial judge. See Code §§ 38-301, 38-305, 38-406, 4-315; *Griffith* v. *Federal Land Bank of Columbia*, 190 *Ga.* 578, 579 (10 S. E. 2d, 71); *Greble* v. *Morgan*, 69 *Ga. App.* 641 (26 S. E. 2d, 494).

■ The defendant Thomas, while being questioned as a witness by counsel for the plaintiff, was asked if he had ever paid a license as a contract hauler, and the reply was in the negative, and objection was made on behalf of the defendant corporation to the admission of this evidence as being irrelevant and immaterial as to it. The plaintiff sought to show by Stanley Allgood, a brother of the plaintiff, that this brother and an attorney visited the office of the Dalton Brick and Tile Corporation on Wednesday or Thursday following the collision on Sunday, and that D. D. McArthur, admittedly the general manager of the corporation, told this witness "that he, McArthur, had ordered and directed Barney Thomas to take that truck which belonged to the brick company to the gasoline station on Sunday and get it gassed and oiled preparatory to leaving on a long trip with a load of brick for the brick company on Monday morning following at 5 o'clock a. m.; that Mr. Thomas at the time of the accident was driving the truck involved in the accident . . to the place where he lived; that he was returning from the gasoline station in Dalton, Georgia, south of the place where the accident occurred with the truck"; that Thomas "had the truck gassed and oiled under his orders and instructions for the purposes hereinbefore set forth and that Thomas was about the business of the company at the time the accident occurred." When Stanley Allgood first began to tell of the visit to the office of the defendant corporation objection was made on behalf of this defendant on the ground that the testimony was hearsay as to the corporation, and further objection was made on the ground that the testimony was hearsay, being statements made by an agent some four days after the collision, and inadmissible under the provisions of Code § 4-315. The defendant corporation also objected to the admission in evidence of a Georgia chauffeur's license issued by the Department of Public Safety to Barney Earl Thomas subsequently to the time of the collision, on June 19, 1948, and expiring on June 30, 1949, and to the admission in evidence of two

insurance policies, a liability policy and a fire, theft, and collision policy, showing that the tractor or truck was insured in the name of the defendant corporation as the owner thereof at the time of the collision. The objections of the defendant corporation to all of this evidence were sustained, although the trial judge stated, in ruling on the admissibility of the insurance policies, that he would permit the plaintiff to introduce in evidence the portions of the insurance policies which would throw light on the question of ownership of the truck by the Dalton Tile and Brick Corporation, but counsel for the plaintiff insisted on offering the insurance policies in evidence in their entirety, with non-transparent paper pasted over the amount of the liability insurance. These rulings on the admissibility of evidence are the basis of the fifth through the tenth assignments of error. The fact that Thomas had never paid a license as a contract hauler is only a circumstance indicating that he may not have been an independent contractor or a contract hauler, but if in fact he were a contract hauler, the fact that he had not paid a license would only show a violation of law, and would not disprove the fact of being a contract hauler. If McArthur, the general manager of the corporation, did tell Stanley Allgood, as this witness would have testified (but which McArthur denied on cross examination by counsel for the plaintiff), that he ordered and directed Thomas on the Sunday in question to take the truck which he said belonged to the corporation to get it gassed and oiled preparatory to making a trip for the brick company on the following Monday at 5 a. m., and that Thomas was on his way to where he lived after having done this, this is entirely consistent with the subsequently established fact, as shown by the direct and unimpeached evidence of the defendant corporation, that Thomas had purchased the truck from the defendant corporation some three months previously, under a conditional-sales or retention-of-title contract, and that the corporation still held title to the truck, and that since that time Thomas had been hauling brick for the corporation as a contract hauler, and under such circumstances the testimony could not be construed as an admission by McArthur, even if he was the alter ego of the company, that the corporation was the actual owner of the truck, and that Thomas was an employee of the corporation working

under his (McArthur's) direction and control at the time of the collision. The circumstances are such that McArthur could have directed Thomas, an independent contractor who had bought a truck from the corporation, and was still paying for the truck under a retention-of-title contract, and had been hauling brick for the corporation on a contract basis, to get the truck gassed and oiled preparatory to making a trip for the corporation, or McArthur could have directed Thomas, an employee who drove a truck for the corporation, to get this truck gassed and oiled preparatory to making a trip. The direct and unimpeached evidence of the defendant in this connection shows only the former situation and not the latter. The fact that a chauffeur's license was issued to Thomas subsequently to the collision has no direct bearing on the question involved, and at most is only a circumstance tending to show that Thomas may have driven or intended driving a truck for someone in the status of an employee. The two insurance policies showing that the truck was insured in the name of the defendant corporation at the time of the collision as the owner thereof are only circumstances indicating that the defendant corporation was the owner of the truck, and evidence subsequently introduced for the defendant corporation shows that the insurance had originally been issued when the defendant corporation was the actual owner of the truck, that the same expired a short time after the sale of the truck to ·Thomas, and had been renewed by the insurance agency only a few days before the collision without any investigation being made by the agency to determine whether the corporation still owned the truck. It is a well-established principle of substantive law that circumstantial evidence has no probative value in establishing a fact where such evidence is consistent with direct and unimpeached evidence showing the non-existence of such a fact. The material fact which the plaintiff needed to establish in order to show a right of recovery against the defendant corporation was that Thomas was an employee of the corporation acting within the scope of his employment at the time of the collision. Irrespective of whether any or all of the above excluded evidence was admissible at the time it was offered in evidence, under what subsequently transpired at the trial as shown by the record, that is, the introduction of direct and unimpeached evidence by

the defendant corporation showing that Thomas was not an employee of the corporation at the time and place in question, and showing that the only connection Thomas had with the corporation after March 31, 1948, was that of an independent contractor, and tending to explain the circumstantial evidence so as to make it consistent with the direct and unimpeached evidence, the exclusion of the evidence and the rulings of the trial judge in this respect, upon which the fifth through the tenth assignments of error are based, fail to show harmful error. For a further discussion of the evidence and citations of authority in this respect, see division 4 of the opinion, infra, dealing with the assignments of error on the direction of the verdict and the judgment thereon.

■ The eleventh and twelfth assignments of error are on the direction of the verdict, and the judgment based thereon. It is the contention of the plaintiff that there were issues of fact which should have been submitted to the jury, and the controlling issue in this respect is whether there is any evidence of probative value, as compared to all of the evidence, from which a jury could determine that at the time and place in question Thomas was an employee of the defendant corporation acting within the scope of his employment. The burden of proof was on the plaintiff to establish this fact, as well as the negligence of the individual defendant as the proximate cause of the plaintiff's injuries, before there could be any recovery under the doctrine of respondeat superior, and to carry this ultimate burden of proof the fact could not be established by circumstantial evidence, if such circumstantial evidence was at the same time consistent with direct and uncontradicted evidence showing that the only connection that the defendant Thomas had with the corporation after March 31, 1948, was that of an independent contractor hauling brick for the corporation. In this connection the controlling principle has been announced and applied many times by this court and the Supreme Court. See *Georgia Ry. & Electric Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076); *Emory University* v. *Bliss*, 35 *Ga. App.* 752 (134 S. E. 637); *Federal Reserve Bank of Atlanta* v. *Haynie*, 46 *Ga. App.* 522 (168 S. E. 112); *Frazier* v. *Georgia Railroad & Banking Co.*, 108 *Ga.* 807 (33 S. E. 996); *Taggart* v. *Savannah Gas Co.*, 179 *Ga.* 181 (175

S. E. 491). There was direct evidence or stipulations showing that prior to March 31, 1948, Thomas was an employee of the defendant corporation and drove the Studebaker tractor or truck as such an employee, delivering brick for the corporation; that on March 31, 1948, the truck was sold by the corporation to Thomas, and that Thomas signed a note in payment therefor, and that the corporation's attorney was notified of the transaction and requested to prepare suitable papers for the corporation, but on account of being engaged in court and with other matters he delayed attending to the matter for about two weeks; that later he prepared a retention-of-title contract, which was dated back to March 31, 1948, the date the sale was made, but which was, in fact, signed by the defendant Thomas in the middle of April, 1948; that after the information was submitted to the attorney and before he prepared the contract a payment of $75 was made on April 10, 1948, but the attorney did not learn of this fact until he had prepared a contract for the full purchase price, and instead of preparing a new contract the attorney made a note in ink of the fact of this payment on the contract, and this contract, showing subsequent substantial payments, was filed for record and recorded in the office of the clerk of the superior court on June 5, 1948, the day before the collision occurred; that after the collision Thomas completed payment for the truck, and the contract was canceled of record on September 7, 1948, as having been paid in full; that on March 31, 1948, Thomas borrowed $200 from the Bank of Dalton, giving the bank a bill of sale to the truck as security, the same having been recorded on the following day; that after March 31, 1948, Thomas was no longer carried on the records of the defendant corporation as an employee and received no payments from the corporation for work done after this date as an employee, but did receive payments for hauling brick at established rates on a contract basis; that on Sunday afternoon, June 6, 1948, he had come to Dalton, accompanied by his wife, to get gasoline and oil for the truck, but all service stations in Dalton were closed, and while on his way home he turned across the highway in order to park the truck at a grocery store to buy a pack of cigarettes, when the collision occurred. There were other circumstances, in addition to the excluded evidence, by which the plaintiff sought to

establish that Thomas was an employee of the defendant corporation, including a showing that the truck was registered in the name of the defendant corporation, and that Thomas had made purchases of gasoline and oil for the truck on a courtesy card issued to the corporation. But these circumstances were explained by the direct evidence which showed that the registration plates had already been ordered for the truck at the time it was sold to Thomas, and that his purchases of gasoline and oil on a courtesy card in the name of the corporation, as he had been accustomed to do as an employee prior to March 31, 1948, were stopped when discovered by the corporation several weeks prior to the collision. As previously mentioned, it was also shown by direct evidence that the insurance policies insuring the truck in the name of the corporation had been renewed and mailed out by the insurance agency a few days prior to the collision as was its custom and practice, in order to prevent a lapse of coverage, without making any investigation to determine whether or not the corporation still owned the truck, and it was also shown that the corporation had not canceled the insurance which was in effect at the time of the sale on March 31, 1948, because of the small rebate and the fact that it would expire shortly. Nowhere in the record is there any direct evidence showing that at the time and place of the collision Thomas was an employee of the defendant corporation, or that he was an employee acting within the scope of his employment at that time. He and his wife were riding in the truck on a Sunday afternoon and were on their way home when he turned across the highway to go to a grocery store to buy a pack of cigarettes. Under all of the direct evidence and the circumstances which are not inconsistent therewith no liability on the part of the defendant corporation is shown, and a verdict was demanded in favor of this defendant. Accordingly, it was not error for the trial judge to direct a verdict for the defendant corporation, and enter judgment in accordance with this verdict.

*Judgment affirmed. Felton and Worrill, JJ., concur.*