A99A1023. FUTCH v. SUPER DISCOUNT MARKETS, INC.
(526 SE2d 401)

RUFFIN, Judge.

Patricia Futch sued Super Discount Markets, Inc. d/b/a Cub Foods for injuries she allegedly sustained when she slipped and fell in a Cub Foods supermarket. The trial court granted Cub Foods' motion for summary judgment, and Futch appeals. For reasons discussed below, we affirm.[1]

For a plaintiff to recover for injuries sustained in a slip and fall action, she must prove that the defendant had actual or constructive knowledge of the hazard and that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the defendant.[2] The plaintiff must also

---

[1] Cub Foods' motion to dismiss this appeal due to defects in Futch's brief is denied. See *Bruce Tile Co. v. Copelan*, 185 Ga. App. 469-470 (1) (364 SE2d 603) (1988).

[2] *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (493 SE2d 403) (1997).

prove that the hazard was in fact the cause of her injuries.[3] In considering a motion for summary judgment, the facts and all reasonable inferences therefrom are to be construed in the light most favorable to the nonmovant.[4] Summary judgment in favor of a defendant is appropriate where no jury issue exists on at least one element of the plaintiff's case.[5]

Futch testified that, on October 15, 1996, she and a friend went shopping at a Cub Foods supermarket. Upon entering the store, Futch went to the magazine rack and began looking at magazine covers. To the right of the magazine rack was another display. As Futch was standing looking at the magazines, she fell backward onto the floor. Futch never testified that she felt anything slippery under her feet when she fell. When asked if she knew what caused her fall, Futch testified as follows:

A. Oh, well, when I was down on the floor, I looked around to see. I was really shocked, what happened. One minute I'm looking at the magazines, and the next minute I am looking at the ceiling. And I saw some water or clear fluid. I can't say that it was water. I don't know that.
Q. Okay. Where did you see the clear fluid?
A. Actually, it was beyond me. And I saw two larger, two other puddles on the floor. And I just surmised that that's what I had slipped in as well.

When questioned about the two puddles, Futch admitted that they were in front of the other display, "a little distance from where I was." It did not appear to Futch that either of these puddles had been disturbed, and she admitted that she had not crossed in front of the other display before her fall. Although Futch referred to the two puddles as "two other puddles," Cub Foods' counsel attempted to clarify whether Futch in fact noticed any other puddles that might have caused her fall. He asked Futch, "Did you see any clear liquid in front of the magazine rack at any time?" Futch responded, "No." He had Futch draw a diagram of the scene, and the only puddles she identified were the two in front of the other display. He questioned Futch as follows:

Q. [A]fter you stood up . . . did you look at the floor where you had just fallen?

---

[3] See *Christopher v. Donna's Country Store*, 236 Ga. App. 219, 220-221 (1) (511 SE2d 579) (1999).

[4] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[5] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

A. I think it was while I was sitting down. And I looked around to see what happened, because there had to be some reason why I wasn't still in the upright position. And that's when I realized the floor was wet.

Q. When you looked around at the floor, did you see anything other than the two puddles in front of this other display that you thought caused you to slip and fall?

A. No.

At one point, Futch seemed to suggest that there might have been another puddle where she was standing, although her testimony was very equivocal:

Q. When you stood up, could you see the puddles of liquid there?

A. When I was in the sitting position is when I saw these other two puddles. But as far as the liquid where I was standing, I don't remember when I saw that.

Q. But you could see it from the standing position? You just don't remember when?

A. I don't remember ever seeing it, to be honest with you, other than when I was already on the floor. I either felt it or saw it. I don't actually remember how I determined. But when I saw these other two, I remember looking up to see if there was any air conditioner ventilation that could cause condensation.

However, when questioned further, Futch testified as follows:

Q. And again, other than these two puddles, you didn't see any other puddles in this area?

A. No.

Q. And you didn't feel any liquid on the front of the magazine rack?

A. Not that I remember. You know, even when I was on the floor, I couldn't even remember that.

Futch testified that she did not recall getting any liquid on her hands or clothes. Thus, the only suggestion of any liquid in the area where she fell is Futch's ambiguous testimony that she did not know how she determined any liquid was present. However, this is contradicted by Futch's unambiguous testimony that she did not see or feel any liquid in the area where she fell.

Futch testified that she pointed out the puddles of water to the store's closing manager, Ray Morris. In his affidavit, Morris stated that he looked in the area after Futch fell and saw two small spots of

water, although there were no prints in these water spots. Morris stated that three men had been involved in an altercation in the magazine area about ten minutes before Futch's fall. He stated that he inspected the area after the altercation and found nothing on the floor. According to Futch, Morris told her that the men involved in the altercation "must have spilled some water."

Futch contends that summary judgment was improper because issues of fact remain as to whether Cub Foods had superior knowledge of the puddles of liquid on the floor. However, regardless of the parties' respective knowledge of these puddles, Futch must show that these puddles in fact caused her fall. As we recognized in a recent slip and fall case,

> [i]t is axiomatic that a plaintiff in a negligence case can prevail only if she shows that a defendant's negligence caused her injuries. . . . A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant. Likewise, it is a well settled principle of negligence law that the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.[6]

Although the evidence shows that there were two puddles of liquid in the area near where Futch fell, Futch's testimony establishes that these puddles were in fact located in front of a different display. Futch did not walk through these puddles while approaching the magazine rack, and both Futch and Morris testified that these puddles did not appear to have been disturbed. Thus, there is no evidence that these two puddles contributed in any way to Futch's fall.

The dissent contends that there is evidence of a third puddle in the area where Futch fell. It is true that Futch's testimony was somewhat confusing, particularly her use of the phrase "two other puddles." However, although she was repeatedly questioned about what she noticed, she never clearly testified that she noticed any liquid in the area where she fell. When first asked where she saw any liquid, she responded, "Actually, it was beyond me," and then went on to mention the two "other" puddles. To the extent that this statement implies the existence of a third puddle, it does not suggest that such puddle was in the area where Futch fell. The closest Futch came to

---

[6] (Citations and punctuation omitted.) *Christopher*, supra at 220 (1). See also *Alterman Foods v. Ligon*, 246 Ga. 620, 625 (272 SE2d 327) (1980) ("Falling and injuring one's self proves nothing. Such happenings are commonplace wherever humans go.").

claiming she noticed liquid in the area where she fell was her testimony that "I don't actually remember how I determined" that there was liquid "where I was standing" — "I either felt it or saw it." However, this fuzzy, negative testimony was contradicted by Futch's unambiguous testimony that she did not see or feel any liquid in front of the magazine stand.[7] Moreover, Futch unequivocally testified that she did not see any puddles, other than the two in front of the other display, that she thought might have caused her fall. In her appellate brief, Futch does not claim that she noticed any liquid other than the two puddles in front of the other display — indeed, the brief merely states that she "noticed two puddles of clear liquid near where she fell."[8] In any event, to the extent that her deposition testimony is contradictory regarding whether she noticed any liquid in the area where she fell, the favorable portion of her testimony must be disregarded, as no explanation is given for the contradictions.[9]

We do not believe that the mere presence of two undisturbed puddles near the area of her fall raises an issue of fact as to whether Futch might have slipped in a different puddle of liquid, particularly in light of Futch's direct testimony that she saw no liquid on the floor where she fell and noticed no liquid on her hands or clothes.[10] Futch did not testify that she felt anything slippery under her feet at the time of the fall — she simply testified that "[o]ne minute I'm looking at the magazines, and the next minute I am looking at the ceiling."[11] "[P]roof of nothing more than the occurrence of the fall is insufficient

---

[7] Quoting from deposition testimony, the dissent states that "[a]lthough plaintiff never did 'see any clear liquid in front of the magazine rack at any time[,] . . . [she nevertheless] realized the floor was wet.'" However, the ellipses in the dissent's quote represent four pages of intervening questions and answers. In fact, Futch testified that she looked around after falling, "[a]nd that's when I realized the floor was wet." Futch was then asked if she saw "anything other than the two puddles in front of this other display that you thought caused you to slip and fall," and she responded, "No."

[8] Futch's brief does not clearly articulate whether she claims to have slipped on one of the two puddles that she saw or on some third puddle she did not see. At points, her brief suggests that her fall was caused by one of the puddles that she saw. For example, she states that she "slipped and fell on a clear fluid on the terra cotta floor. She did not see the fluid until after she fell." She further states that "if the water on the floor was observable to Ms. Futch in scanning the area, then clearly, Mr. Morris . . . should have observed and removed said fluid prior to her fall." At other points, Futch appears to claim that the existence of these two puddles supports an inference that she slipped in a different puddle. For example, she states that both she and Morris saw "puddles of water close to the area in which she fell. . . . This gives rise to a reasonable inference as to what caused her fall." One thing is clear, however — nowhere in her brief does Futch claim that she *noticed* any liquid other than the two puddles in front of the other display.

[9] See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986).

[10] See *Christopher*, supra at 221 (1) (greasy substance on plaintiff's arms and clothing did not show that she slipped in such substance).

[11] In fact, she used almost this same language to describe the fall on another occasion: "I was looking at magazines. And next thing I knew, I was looking at the ceiling."

to establish the proprietor's negligence."[12] "[W]hether [Futch] slipped on something or nothing at all is subject only to speculation. . . . Because [Futch] failed to point to any evidence establishing the essential element of causation, the trial court properly granted summary judgment to [Cub Foods]."[13]

*Judgment affirmed. Johnson, C. J., Pope, P. J., Andrews, P. J., and Smith, J., concur. McMurray, P. J., and Eldridge, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment in favor of defendant Super Discount Markets, Inc. d/b/a Cub Foods in this slip and fall action brought by plaintiff Patricia Futch. First, plaintiff never *contradicted* herself about the cause of her fall; rather, she steadfastly maintained only that she did not *see* any fluid at the spot where she fell, before her tumble. Consequently, I disagree this is a proper case to apply the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680). Thus, when the entire record is reviewed *in the light most favorable to Futch as nonmovant*, the evidence clearly authorizes the favorable inference that she slipped in a *third* puddle of clear fluid, located where she had been standing while looking at magazines on display. At her deposition, Futch testified that, when she was down on the floor, she "saw some water or clear fluid. . . . And [she] saw two *larger*, two *other* puddles on the floor . . . about 10 to 12 inches in diameter." (Emphasis supplied.) Plaintiff's "[f]eet were towards where the two other puddles were. In other words, here's the magazine rack, and here's the other two puddles. . . ." Although plaintiff never did "see any clear liquid in front of the magazine rack at any time[,] . . . [she nevertheless] realized the floor was wet." Plaintiff also testified that the night manager, Morris, said to her "some young men — 'that had a fight there earlier, and they must have spilled some water.' " Plaintiff pointed out to Morris the area where she fell and the puddles of water or liquid. She further explained that, when she stood up after having fallen, she "didn't see the puddles of water on the floor again. But that's just because [she] didn't look." Consequently, I respectfully disagree with the majority's conclusion that this case is based solely on speculation and conjecture. Although Morris deposed that he checked the area after the fight (about ten minutes before plaintiff's fall) and determined there was nothing on the floor, the trier of fact is authorized to conclude he looked carelessly because he failed to discern the two nearby puddles that were indisputably extant after plaintiff's fall. In my view, this case is controlled by the recent decision of the

---

[12] (Punctuation omitted.) *Alterman Foods*, supra at 624.
[13] *Christopher*, supra.

Supreme Court of Georgia in *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403), reaffirming the old rule that the routine issues of premises liability are generally not susceptible of summary adjudication unless the evidence is plain, palpable, and undisputed. Here, the evidence of defendant's knowledge is in conflict, and so I respectfully dissent from the affirmance of summary judgment.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED DECEMBER 1, 1999 —
RECONSIDERATION DENIED DECEMBER 15, 1999.

*Roy S. Mullman*, for appellant.
*Drew, Eckl & Farnham, Andrew B. Koplan, George R. Moody*, for appellee.